## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN L. STEVENS, | ) | CASE NO. 3:17 CV 1245 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| v. | ) | |
| | ) | |
| THOMAS SCHWEITZER, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

## I.    INTRODUCTION

Petitioner Kevin L. Stevens ("Stevens" or "Petitioner"), a prisoner in state custody, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Stevens*, Case No. CR20130473. (R. 1.) On September 25, 2017, Respondent Warden Thomas Schweitzer  ("Respondent") filed a return of writ. (R. 10.) On March 1, 2018, Stevens filed a traverse. (R. 19.) This matter is before the undersigned pursuant to Local Rule 72.2 for preparation of a report and recommendation on Stevens' petition. The undersigned recommends the petition be DENIED, as explained herein.

## II.    SUMMARY OF FACTS

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The

1

Third District Court of Appeals ("state appellate court") summarized the facts underlying

Stevens's conviction as follows:

> {¶ 2} This case stems from incidents that occurred on October 8 and 9, 2013. On October 8, the victim invited Stevens to stay the night at her house. The victim went to sleep and awoke after Stevens raped her. On October 9, the victim again invited Stevens to her house to obtain Methadone from him. After the victim obtained the methadone, she asked Stevens to leave. However, because Stevens refused to leave, the victim's sister and her sister's boyfriend came to the victim's house to coax Stevens into leaving. After Stevens left, the victim took her prescribed sleeping medication and went to sleep. She again awoke to Stevens raping her. After discovering that Stevens gained entry into her house and raped her a second time, the victim tossed Stevens's jacket out the back door of her house and, when Stevens went after it, she locked the door behind him. Under the guise of searching for his keys, Stevens regained entry into the victim's house and physically assaulted her.

*State v. Stevens*, 2016-Ohio-466, 2016 Ohio App. LEXIS 384 (Ohio Ct. App., Feb. 8, 2016).

### III.    PROCEDURAL HISTORY

**A. State Court Conviction**

On December 12, 2013, an Allen County Grand Jury charged Stevens with two counts of

rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(c), (A)(2) and one count of

aggravated burglary in violation of O.R.C. § 2911.11(A)(1). (R. 10-1, Ex. 1.)  All three counts

carried repeat-violent-offender specifications. (R. 10-1, Ex. 1.) Stevens entered pleas of not

guilty to all charges. (R. 1 at 2.)

On September 2, 2014, the State filed a motion moving the trial court to issue an arrest

warrant for the victim as a material witness. *Stevens*, 58 N.E.2d at 593. The trial court issued the

warrant that same day. *Id*. A jury trial commenced on September 15, 2014. (R. 10-2 at 2.) The

jury found Stevens guilty as charged, on September 19, 2014. (R. 10-1, Exs. 2, 3.) The trial court

determined Stevens was a repeat violent offender; and, on November 12, 2014, imposed an eight

year sentence for the first rape conviction, eleven year sentence for the second rape conviction, five year sentence for the burglary conviction, and six year sentence for the repeat-violent-offender specification. (R. 10-1, Ex. 4.) The trial court imposed the terms to be served consecutively for an aggregate sentence of thirty years. (R. 10-1, Ex. 4.)

**B. Direct Appeal**

On December 15, 2014, Stevens, acting *pro se*, filed a notice of appeal with the state appellate court. (R. 10-1, Ex. 5.) He raised the following assignments of error:

1. Appellant was deprived of his right to effective assistance of counsel and an impartial jury as guaranteed by the 6th Amendment of the U.S. Constitution, Article I § 10, and Article III § 2 of the Ohio Constitution.

2. Appellant was denied the due process of a fair and impartial trial as guaranteed by the 5th, 6th, and 14th Amendments of the U.S. Constitution and Article I § 16 of the Ohio Constitution based on prosecutorial misconduct.

3. Appellant was denied the fundamental due process of a fair and impartial trial as guaranteed by the 5th Amendment of the U.S. Constitution and Article I § 16 of the Ohio Constitution where a conviction stands absent sufficient evidence.

4. Appellant was denied his due process rights guaranteed him by the 5th, 6th, and 14th Amendments of the U.S. Constitution and Article I § 16 of the Ohio Constitution when trial court abused it's [*sic*] discretion.

(R. 10-1, Ex. 6.) The state appellate court affirmed the trial court's judgment, on February 8, 2016. (R. 10-1, Ex. 8.)

On March 21, 2016, Stevens, acting *pro se*, filed a notice of appeal with the Ohio Supreme Court. (R. 10-1, Ex. 9.) He presented the following propositions of law in his memorandum in support of jurisdiction:

1.      Whether appellant was deprived of his right to effective assistance of counsel and an impartial jury as guaranteed by the 6th Amendment of the United States Constitution[,] Article I § 10, and Article III § 2 of the Ohio Constitution.

2.      Whether appellant was denied the due process of a fair and impartial trial as guaranteed by the 5th, 6th, and 14th Amendments of the United States Constitution and   Article I § 16 of the Ohio Constitution based on prosecutorial misconduct.

3.      Whether appellant was denied the fundamental due process of a fair and impartial trial as guaranteed by the 5th Amendment of the United States Constitution and  Article I § 16 of the Ohio Constitution where a conviction stands absent sufficient evidence.

4.      Whether appellant was denied his due process rights guaranteed him by the 5th, 6th, and 14th Amendments of the United States Constitution and Article I § 16 of the Ohio Constitution when trial court abused it's [*sic*] discretion.

(R. 10-1, Ex. 10.) The Ohio Supreme Court declined jurisdiction over the appeal, on June 15, 2016.

(R. 10-1, Ex. 11.)[1]

## C. Federal Habeas Corpus

Petitioner's *pro se* petition for writ of habeas corpus sets forth the following grounds for

relief:

1.      Petitioner was denied his guaranteed right to effective assistance of trial counsel and an impartial jury in accordance to the Sixth and Fourteenth Amendments of the United States Constitution and the State of Ohio Constitution.

2.      Prosecutorial misconduct denied Petitioner the due process of a fair and impartial trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the State of Ohio Constitution.

---

[1] Neither Respondent's nor Petitioner's briefs set forth any collateral state proceedings.

3.      Petitioner was denied his fundamental due process of a fair and impartial trial as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and the State of Ohio Constitution where a conviction stands absent sufficient evidence.

4.      Petitioner was denied his due process rights guaranteed hum [*sic*] by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the State of Ohio Constitution when the trial court abused its discretion.

(R. 1) (capitalization altered).

## IV.    STANDARDS OF REVIEW

**A. AEDPA Review**

Stevens' petition for writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision forbids a federal court from granting

5

habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if contains "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under de novo review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550

U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted). A petitioner, therefore, "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

## V.    ANALYSIS

### A. Ground One:  Ineffective Assistance of Trial Counsel

Petitioner's first ground for relief claims his trial counsel provided ineffective assistance by failing to object to prejudicial testimony and failing to adequately investigate and prepare for trial.  (R. 1-2 at 15). Specifically, Petitioner takes issue with counsel's failure to object to certain questions posed by the prosecutor to the victim and other witnesses. (R. 19, PageID# 1734-1739).

When addressing a claim of ineffective assistance of counsel, courts apply the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate that: (1) his counsel's performance was deficient; and (2) the allegedly ineffective assistance resulted in prejudice to the petitioner, meaning that "counsel's errors were so serious

8

as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* Moreover, to establish the prejudice component of the *Strickland* standard, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lundgren v. Mitchell*, 440 F.3d 754, 799 (6th Cir. 2006) (citations omitted).

Where the state appellate court, as here, correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, its ruling must unreasonably apply that standard in order for the petitioner to receive habeas relief. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable - a substantially higher threshold.") (internal quotation marks omitted). Federal habeas courts employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

Here, the state appellate court, after identifying the *Strickland* standard's two-pronged test, addressed Stevens's claims as follows:

{¶ 39} In his first assignment of error, Stevens argues that he was denied the effective assistance of counsel. Specifically, Stevens argues that his trial counsel failed to (1) object to testimony, (2) request a rape-shield-law hearing, and (3) provide expert-witness testimony regarding Short Tandem Repeat DNA evidence.

{¶ 40} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306, 750 N.E.2d 148 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687, 104 S.Ct. 2052. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141–42, 538 N.E.2d 373 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976), vacated in part on other grounds, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

{¶ 41} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1–13–04, 2014-Ohio-259, 2014 WL 296002, ¶ 48, quoting *Bradley* at 142, 538 N.E.2d 373, citing *Strickland at* 691, 104 S.Ct. 2052[.] "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*., quoting *Bradley* at 142, 538 N.E.2d 373 and citing *Strickland* at 694, 104 S.Ct. 2052.

{¶ 42} First, Stevens argues that his trial counsel was ineffective for failing to object to the testimony of Detective Todd Jennings ("Detective Jennings") of the Lima Police Department and the testimony of the victim. "The 'failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *Liles* at ¶ 49, quoting *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 139, citing *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). "To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *Holloway* at 244, 527 N.E.2d 831, citing *Lytle* at 396–397, 358 N.E.2d 623 and *Strickland* at

10

668, 104 S.Ct. 2052 "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994), quoting Jacobs, Ohio Evidence, at iii-iv (1989).

{¶ 43} Stevens argues that his trial counsel was ineffective for failing to object to Detective Jennings's testimony regarding what he learned from other law enforcement officers involved in the investigation of the case. Specifically, Stevens argues that his trial counsel should have objected to Detective Jennings's testimony that he "spoke with" Patrolman Trent Kunkleman ("Patrolman Kunkleman") when Detective Jennings arrived at the scene. (Appellant's Brief at 12); (Sept. 18, 2014 Tr., Vol. IV, at 1167–1170). Further, Stevens argues that his trial counsel should have objected to Detective Jennings's testimony that (1) he heard Officer Michael Carman's ("Officer Carman") prior testimony about the case and agreed with his testimony; (2) the victim's phone was processed by Detective Scott Leland ("Detective Leland"), and (3) Detective Jennings consulted Detective Steven Stechschulte, Jr. ("Detective Stechschulte") in an attempt to identify and locate Stevens. (Appellant's Brief at 12); (Sept. 18, 2014 Tr., Vol. IV, at 1197–1201). Stevens argues that his trial counsel was ineffective for failing to object to Detective Jennings's testimony because it improperly "bolster[s] and vouch[es] for the credibility" of Officer Kunkleman, Officer Carman, Detective Leland, and Detective Stechschulte. (Appellant's Brief at 12).

{¶ 44} Stevens fails to show how these alleged errors were prejudicial. Contrary to Stevens's argument, neither the State nor Detective Jennings "vouched for the credibility" of any witness. None of the portions of Detective Jennings's testimony vouches for the credibility of another witness. *See Liles* at ¶ 54 (concluding that Liles's trial counsel was not ineffective for failing to object to testimony because it was not offered to bolster credibility). Instead, those portions of Detective Jennings's testimony were offered to describe his involvement in investigating the case. Accordingly, Stevens's trial counsel was not ineffective for failing to object to Detective Jennings's testimony.

{¶ 45} Stevens also argues that his trial counsel was ineffective for failing to object to the victim's testimony regarding whether the State offered her the opportunity to "walk away" if she was lying about being raped by Stevens and regarding why she was issued a material-witness warrant. (Appellant's Brief at 12); (Sept. 16, 2014 Tr., Vol. II, at 505–506, 638–640). In particular, Stevens argues that his trial counsel was ineffective for failing to object to the testimony of the victim because the State was improperly "leading/manipulating [the victim] into an answer." (Appellant's Brief at 12).

11

{¶ 46} "Evidence Rule 611(C) provides that '[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.'" *State v. Stairhime*, 3d Dist. Defiance No. 4–13–06, 2014-Ohio-1791, 2014 WL 1692781, ¶ 46. "This broad exception places the decision of whether to allow leading questions within the sound discretion of the trial court." *Id.*, citing *State v. Jackson*, 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001) and *State v. Jefferson*, 2d Dist. Greene No. 2002 CA 26, 2002-Ohio-6377, 2002 WL 31647807, ¶ 9. "As a result, the Ohio Supreme Court has held that the failure to object to leading questions does not constitute ineffective assistance of counsel." *Id.*, citing *Jackson* at 449, 751 N.E.2d 946 and *State v. Fraker*, 3d Dist. Union No. 14–12–19, 2013-Ohio-4561, 2013 WL 5636051, ¶ 59. Stevens provides no argument that the result of his trial would have been different had his trial counsel objected to the victim's testimony. Therefore, we conclude that any failure on the part of Stevens's trial counsel to object to any leading questions does not rise to the level of ineffective assistance of counsel.

{¶ 47} Stevens also argues that his trial counsel was ineffective for failing to request a rape-shield-law hearing. The rape-shield law prohibits any evidence of a victim's sexual history except to show "'the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender.'" *State v. Black*, 172 Ohio App.3d 716, 2007-Ohio-3133, 876 N.E.2d 1255, ¶ 12 (3d Dist.), quoting R.C. 2907.02(D). "Even if one of the aforementioned exceptions applies, such evidence may be introduced only if the court determines that the evidence is material to a fact at issue and that its prejudicial nature does not outweigh its probative value." *Id.*, citing R.C. 2907.02(D) and *State v. Chaney*, 169 Ohio App.3d 246, 2006-Ohio-5288, 862 N.E.2d 559, ¶ 6 (3d Dist.).

{¶ 48} Stevens makes no argument that the victim's prior sexual history is relevant or admissible—that is, Stevens makes no argument that the victim's prior sexual history would have been used to show "the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender." Therefore, Stevens's argument is without merit because he cannot show that he was prejudiced—that is, he cannot show that the admission of that evidence would have had a reasonable probability of success after a rape-shield-law hearing had his counsel requested such a hearing.

{¶ 49} In addition, Stevens argues that his trial counsel was ineffective for failing to provide expert-witness testimony regarding Short Tandem Repeat DNA evidence. "A decision by trial counsel not to call an expert witness generally will not sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 118. *See also State v. Dooley*, 3d

Dist. Allen No. 1–10–41, 2010-Ohio-6260, 2010 WL 5296938, ¶ 16, citing *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 118, *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993), *State v. Thompson*, 33 Ohio St.3d 1, 10–11, 514 N.E.2d 407 (1987), and *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶ 50} Stevens's sole argument that his counsel was deficient for failing to seek an expert witness is that "the trial court ordered up to $11,000 for expert assistance for defense, of which $3,000 was for an Investigator, and of which trial counsel used none for appellant's defense or preparations for trial." (Appellant's Brief at 13). However, Stevens provides no argument to indicate how an expert witness's testimony regarding Short Tandem Repeat DNA evidence would have affected the outcome of trial. *See State v. Young*, 3d Dist. Defiance No. 4–01–18, 2002 WL 129824, *3 (Feb. 1, 2002) ("Nothing in the record indicates how an expert witness would have testified or how such testimony would have affected the outcome of the trial."). Likewise, there is no evidence in the record that an expert witness would have provided favorable testimony. *Mundt* at ¶ 118. Therefore, Stevens's trial counsel was not ineffective for failing to seek an expert witness.

*Stevens*, 2016-Ohio-446 at ¶¶39-50.

Petitioner's traverse reiterates his state court arguments that: (1) the prosecution's questioning of the victim was intended to garner sympathy from the jurors and to portray her as honest; (2) the prosecution's questioning of Detective Jennings was tantamount to bolstering or vouching for the credibility of another witness and the rape kit testing; and (3) defense counsel failed to object to the above and failed to utilize $11,000 for expert assistance. (R. 19, PageID# 1737-1739). Neither the petition nor the traverse offers any meaningful argument as to how the state appellate court's extensive analysis of these arguments was an unreasonable application of *Strickland*.

First, the state appellate court concluded above that neither the prosecution nor Detective Jennings vouched for any witness; therefore, counsel's failure to object is moot. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012) ("Generally, improper vouching involves either

13

blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony.") The state court reasonably concluded that the challenged comments did not fall into these categories. The determination that a failure by counsel to object to leading questions does not axiomatically result in effective assistance is also supported by case law.

> Petitioner next contends that the prosecution excessively used leading questions during Boone's direct examination and that counsel's failure to object to those questions was objectively unreasonable. Because a state court may violate its own rules of evidence without violating federal law, a state court's erroneous application of state law is only ground for habeas relief if the application also violates federal law. *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Such a violation occurs only if the "evidentiary ruling is so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see Washington v. Hofbauer*, 228 F.3d 689, 699 (6th Cir. 2000). Therefore, we can only award relief where counsel's failure to object to the prosecutor's questions denied Petitioner a fair proceeding. *Cf. United States v. Nguyen*, 379 Fed. Appx. 177, 181 (3d Cir.2010); *Roe v. Belleque*, 232 Fed. Appx. 653, 654–55 (9th Cir. 2007).

*Jackson v. Bradshaw*, 681 F.3d 753, 764 (6th Cir. 2012). Further, none of the alleged examples of leading questions offered by the Petitioner appear so egregious as to deprive him of a fundamentally fair trial.

With respect to the rape shield law issue, Respondent argues that it is an issue of state law and, therefore, does not present a basis for habeas relief. (R. 10, PageID# 60-61). The court agrees. Furthermore, the state appellate court found that Stevens essentially made no argument as to how the victim's prior sexual history was relevant, thus obviating the need for a rape shield law hearing.

14

Finally, Petitioner's complaint that defense counsel failed to utilize $11,000 "for expert assistance for petitioner's trial preparations and defense ... deprived petitioner of a fair and impartial trial" is a conclusion without an argument. Even assuming *arguendo* that the failure to use the funds constituted deficient conduct under the first prong of *Strickland*, Petitioner fails to demonstrate that such decision resulted in prejudice. In other words, Petitioner merely assumes that an expert would have aided his cause without identifying or explaining how an expert's testimony would have furthered his defense.

Given the highly deferential standard accorded to state court determinations, the court cannot conclude that the state court's decision involved an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts in light of the evidence presented.

## B. Ground Two:  Prosecutorial Misconduct

Petitioner's second ground for relief claims he was denied a fair and impartial trial due to prosecutorial misconduct. (R. 1, PageID# 15). Petitioner asserts that the prosecutor engaged in improper conduct by bolstering during *voir dire*, vouching for the credibility of the victim, asking leading questions, inquiring about a police detective's past experiences, bolstering the detective's credibility, and making prejudicial/inflammatory comments during closing arguments. (R. 19, PageID# 1740-1741). Thus, Petitioner reiterates the arguments raised above, but recasts them in the context of prosecutorial misconduct. Respondent asserts that portions of Petitioner's argument are procedurally defaulted where the state appellate court reviewed only for plain error.

15

"The 'clearly established Federal law' relevant here is [the Supreme Court's] decision in *Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' *Id.* at 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144." *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (*also citing Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.") The Sixth Circuit has explained that habeas relief, under § 2254(d)(1)'s unreasonableness prong, is limited to situations where "there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents," which "[b]y design" is "a hard test to pass … and it is even harder where-as in the case of the 'highly generalized' *Darden-Donnelly* standard…the relevant 'rules are more general,' leaving the state court with 'more leeway' in its 'case-by-case determinations.'" *Davis v. Johnson*, 2016 WL 5076038 at *4 (6th Cir. 2016) (internal citations omitted). "[T]he state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (*quoting Donnelly*, 416 U.S. at 645).

The state appellate court on direct review addressed these claims as follows:

{¶52} In his second assignment of error, Stevens points to a number of instances—during voir dire, trial, and closing arguments—that he argues demonstrates

16

prosecutorial misconduct and denied him a fair trial.

{¶ 53} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Liles*, 3d Dist. Allen No. 1–14–61, 2015-Ohio-3093, 2015 WL 4610672, ¶ 31, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "'To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. Thus, "[n]ot every intemperate remark by counsel can be a basis for reversal." *Id.*, quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012-Ohio-1526, 2012 WL 1142307, ¶ 20, quoting *State v. Landrum*, 53 Ohio St.3d 107, 112, 559 N.E.2d 710 (1990).

{¶ 54} First, Stevens alleges that the prosecutor made an impermissible comment regarding the issue of credibility during voir dire. In particular, Stevens argues that the prosecutor "alluded to her own personal integrity and the oath of office to bolster the states [sic] case before jurors when discussing lying and the ramification of the lie." (Appellant's Brief at 15). In discussing the issue of credibility with prospective jurors, Stevens takes issue with the prosecutor's hypothetical analogy regarding the difference in lying as a teenager and lying in a professional capacity in her duties as a prosecutor. Specifically, he takes issue with the prosecutor's statement, in addressing her hypothetical analogy as to the seriousness of lying in her professional capacity, "I've never done any such thing nor would I ever." (Sept. 15, 2014 Tr., Vol. I, at 198). Stevens's trial counsel did not object to the prosecutor's statements. As such, the alleged improprieties are waived, absent plain error. *State v. Smith*, 3d Dist. Hardin No. 6–14–14, 2015-Ohio-2977, 2015 WL 4510982, ¶ 63, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 139 and *State v. Saleh*, 10th Dist. Franklin No. 07AP–431, 2009-Ohio-1542, 2009 WL 840755, ¶ 68.

{¶ 55} "Crim.R. 52(B) governs plain-error review in criminal cases." *State v. Bagley*, 3d Dist. Allen No. 1–13–31, 2014-Ohio-1787, 2014 WL 1692720, ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24, 595 N.E.2d 1040 (3d Dist. 1991). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *Smith* at ¶ 63, citing *Saleh* at ¶ 68. "We may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Id.*, citing *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). Accordingly, Stevens must show that, absent the prosecutors' statement during voir dire, the outcome of his trial would be different.

{¶ 56} The State concedes that its "nor would I ever" comment that it added to its

17

hypothetical "was unnecessary and perhaps inappropriate." (Appellee's Brief at 12). We agree that it is improper for a prosecutor to place her personal credibility in issue. *See State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 117. However, even if the prosecutor's statement is improper, Stevens failed to show that a reasonable probability exists that, but for the prosecutor's improper remark, the result of his trial would have been different. Moreover, the prosecutor's improper remark occurred during voir dire—that is, the jury had not yet been impaneled and no evidence had been introduced. *See State v. Heller*, 10th Dist. Franklin No. 01AP–648, 2002 WL 338143, *5 (Mar. 5, 2002). Thus, Stevens's argument is without merit.

{¶ 57} Next, Stevens alleges a number of instances during trial that rise to the level of prosecutorial misconduct and deprived him of a fair trial. Essentially, Stevens's grievances can be categorized as prosecutorial misconduct by improperly (1) vouching for witnesses; (2) eliciting prejudicial testimony from witnesses; and (3) asking leading questions.

{¶ 58} First, Stevens points to several instances that he claims that the prosecutor vouched for the credibility of witnesses. "An attorney may not express a personal belief or opinion as to the credibility of a witness." *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 232. Improper "vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *Id.*, citing Jackson at ¶ 117. We do not find improper vouching in any of the prosecutor's remarks to which Stevens points us.

{¶ 59} Stevens first asserts that the prosecutor improperly vouched for the victim's testimony by asking her about the State's offer for her to "walk away" if she was lying about being raped by Stevens. Again, because Stevens's trial counsel did not object to the prosecutor's questions, we review for plain error. In support of its position that the prosecutor's questions to the victim were not improper, the State points us to *State v. Cornwell.* 86 Ohio St.3d 560, 715 N.E.2d 1144 (1999). In the context of plea-agreement arrangements, the Supreme Court of Ohio concluded in Cornwell that prosecutorial questions on that topic were not improper and did not prejudicially affect substantial rights of Cornwell because "[t]he questions concerning the plea [agreements] were brief, not overly emphasized, and were made at the close of the prosecutor's examination of each witness." *Id.* at 571, 715 N.E.2d 1144. While we do not find the circumstances in this case precisely analogous to questioning a witness regarding a plea agreement as the State suggests, the testimony elicited by the prosecutor from the victim pertaining to a "deal" that would allow her to walk away from the case without any consequences was brief, not overly emphasized, and at the end of the prosecutor's examination of the victim. Moreover, the prosecutor did not vouch for the victim's credibility or offer any

personal observations or opinions as to the veracity of the victim's claims. Accordingly, the prosecutor's questions concerning a "deal" offered to the victim to walk away from the case, although not proper, did not rise to the level of reversible error in this case, and Stevens did not show that, absent the prosecutor's questions to the victim, the outcome of the trial would have been different.

{¶ 60} Next, Stevens alleges that the prosecutor improperly led Detective Jennings in testimony meant to vouch for the testimony of other witnesses; solicited testimony from Detective Jennings regarding his past experiences meant "to bolster his credibility and to validate his testimony"; and mentioned the "SANE nurse * * * to bolster [Detective Jennings's] testimony." (Appellant's Brief at 16). Similar to his arguments in his first assignment of error, as instances he claims to be prosecutorial misconduct that deprived him of a fair trial, Stevens points us to Detective Jennings's testimony regarding what he learned about the investigation from Patrolman Kunkleman, that he heard Officer Carman's prior testimony about the case and agreed with his testimony, and that Detective Jennings consulted Detective Stechschulte in an attempt to identify and locate Stevens. We once again review under the plain-error standard because Stevens did not object to any of that testimony, and conclude that Stevens's argument is meritless because, as we concluded in his first assignment of error, none of the portions of Detective Jennings's testimony vouches for the credibility of another witness.

{¶ 61} Also meritless is Stevens's allegation that Detective Jennings's testimony vouched for the victim's testimony. Even though Stevens objected to the State's question to Detective Jennings whether the victim provided consistent stories regarding the charges lodged against Stevens in the indictment, his objection was overruled by the trial court. Even assuming the question was improper, Stevens did not demonstrate that his substantial rights were prejudicially affected and the result of his trial would have been different. Indeed, the prosecutor did not express her personal opinion about the credibility of the victim in asking Detective Jennings whether the victim's story remained consistent throughout his investigation—that is, the prosecutor did not directly comment on the victim's credibility. *See State v. Cappadonia*, 12th Dist. Warren No. CA2008–11–138, 2010-Ohio-494, 2010 WL 541113, ¶ 46, citing *State v. Brown,* 12th Dist. Warren No. CA2002–03–026, 2002-Ohio-5455, 2002 WL 31261718, ¶ 22, quoting *State v. Mundy,* 99 Ohio App.3d 275, 304, 650 N.E.2d 502 (2d Dist. 1994) ("While it is improper for the prosecutor to express to the jury his or her personal opinion about the credibility of any witness, the prosecutor is permitted to make fair comment on the credibility of witnesses based upon their testimony in open court. In those circumstances the jury is not being invited to go beyond the evidence presented in court.").

{¶ 62} Stevens also failed to show that the outcome of his trial would have been

different in light of the prosecutor's question to Detective Jennings, "Did you go in more specific details, in a much more detailed explanation, then what [the victim] told the SANE nurse?" (Sept. 18, 2014 Tr., Vol. IV, at 1189). We review this statement under the plain-error standard because Stevens's trial counsel did not object to it. This question does not vouch for Detective Jennings's credibility. The prosecutor is not implying knowledge of facts outside the record. Instead, the prosecutor was directly referring to evidence in the record—the testimony of Norris. Thus, Stevens's argument is meritless.

{¶ 63} Also meritless is Stevens's argument that he was denied a fair trial because the prosecutor asked Detective Jennings how his training and experience affected his investigation. Concerning that issue, the following exchange took place:

> [The Prosecutor]: Okay. And did you find it odd that she was supposedly asleep both times and he was unable to—He was able to undress her and have sex with her?
>
> [Detective Jennings]: Unfortunately, after you work at the police department for awhile [sic], and especially in the detective bureau, no.
>
> [The Prosecutor]: Okay. Why, what do you mean?
>
> * * *
>
> [Detective Jennings]: I've been involved with investigations and alongside other detectives as well, where I've personally seen on video someone who appeared to be unconscious, not awake, and being sexually violated. It was recorded.

(Sept. 18, 2014 Tr., Vol. IV, at 1192–1193). While Stevens objected to the prosecutor's line of questioning, even assuming the line of questioning was improper, Stevens again failed to demonstrate on appeal how his substantial rights were prejudicially affected or that the outcome of his trial would have been different.

{¶ 64} Next, Stevens points to two exchanges in which he claims the prosecutor improperly elicited prejudicial testimony. The first instance that he points us to is when the prosecutor elicited prejudicial testimony, according to Stevens, from the victim's sister:

> [The Prosecutor]: And once you realized or she realized that the

20

phone was there what was her reaction?

[Victim's Sister]: She was hysterical because he—she knows he was there.

[The Prosecutor]: Okay.

[Victim's Sister]: Because he's the one that took her phone when he was there the night before.

[Stevens's Counsel]: Your Honor, at this point I'm going to object. That's speculation and hearsay.

[Trial Court]: Sustained.

[The Prosecutor]: Okay. She was hysterical, you said?

[Victim's Sister]: Yes.

[The State]: Was she fearful?

[Victim's Sister]: Yes.

[The State]: Okay. Do you remember Detective Jennings or an I.D. Officer, another plainclothes officer, arriving shortly after you guys?

[Victim's Sister]: Yeah.

[The State]: Okay. Do you recall what happened once they arrived?

[Victim's Sister]: She told them her phone was there and gave them the phone.

[The State]: Okay.

[Victim's Sister]: And said that, well, she said he had to bring it back and dropped it off—

[Stevens's Counsel]: Objection, again.

[Victim's Sister]: —when we was [sic] at the police station.

21

[Trial Court]: Sustained.

[The State]: Okay.

[Trial Court]: Just answer the question, ma'am.

[The State]: On certain occasions you're not allowed to tell me—

[Victim's Sister]: Okay.

[The State]: —what she said, okay?

[Victim's Sister]: Okay.

[The State]: You can describe how she was, but.

[Victim's Sister]: Okay.

(Sept. 17, 2014 Tr., Vol. III, at 784–786). Stevens argues that the prosecutor's line of questioning is prejudicial; yet, Stevens fails to argue how this line of questioning is improper or how it prejudicially affected a substantial right.

{¶ 65} Relevant evidence is admissible unless prohibited by another rule, statute, or the United States or Ohio Constitutions. Evid.R. 402. Evidence that is not relevant is not admissible. Evid.R. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Under an exception to the hearsay rule, a witness can testify to a declarant's statement of their then-existing state of mind, emotion, sensation, or physical condition—intent, plan, motive, design, mental feeling, pain, and bodily health—but cannot testify to a statement of memory or belief to prove the fact remembered or belief. Evid.R. 803(3).

{¶ 66} Indeed, the victim's state of mind is relevant to the facts of this case— namely to show that the victim feared Stevens after he committed the rape and aggravated burglary crimes against her. *See State v. Adams*, 7th Dist. Mahoning No. 08 MA 246, 2011-Ohio-5361, 2011 WL 4923522, ¶ 298 ("As rape was one of the underlying felonies here, the victim's state of mind was relevant. State of mind can similarly be used here to show that appellant's entry into her apartment * * * occurred without the victim's consent."), vacated in part on other grounds, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127; *State v. Hayes*, 10th Dist. Franklin No. 94APA11–1667, 1995 WL 347869, *4 (June 6, 1995) (concluding that the

testimony regarding the victim's fear of staying at her house after a rape is relevant and admissible).

{¶ 67} Moreover, Stevens's trial counsel objected to the witness' testimony, not a question posed by the prosecutor. In addition, the prosecutor did not pursue any questions related to inadmissible hearsay statements of the victim and cautioned the witness about her testimony after the trial court sustained Stevens's objections. *See State v. Diar,* 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 206. Therefore, we reject Stevens's argument.

{¶ 68} In the second instance, Stevens argues that the prosecutor elicited prejudicial testimony from Detective Jennings regarding his investigation—or, in particular what he learned from the victim's six-year-old son. Prior to asking Detective Jennings any questions regarding his interview of the victim's son, the prosecutor instructed Detective Jennings not to testify to anything that the victim's son said to him. In response to the prosecutor's question regarding what Detective Jennings asked the victim's son, Detective Jennings testified, "So, I asked him who was there in the morning. He gave me his answer. And I asked him what he could tell me about [Stevens]." (Sept. 18, 2014 Tr., Vol. IV, at 1177). Although Stevens's counsel initially objected to this testimony, he later withdrew his objection. Stevens's argument is meritless. This line of questioning did not prejudicially affect a substantial right of Stevens; rather, it is relevant to the facts of the case. That is, the testimony describes Detective Jennings's investigation of this case. *See State v. Jordan,* 5th Dist. Stark No. CA–8563, 1991 WL 302350, *3 (Dec. 16, 1991) (concluding that questioning a law enforcement officer about "background information regarding his investigation" does not constitute prosecutorial misconduct).

{¶ 69} Next, Stevens argues that he was denied a fair trial because the prosecutor led "witness testimony by predicating [sic] answers in question." (Appellant's Brief at 15). Although it is unclear what line of questioning to which he is referring, we are assuming that he takes issue with, based on the portion of the record that Stevens points us to, the prosecutor asking the victim on re-direct examination, "When you weren't showing up at my office was it because you—you knew we were going to talk about this stuff?" (Sept. 16, 2014 Tr., Vol. II, at 638); (Appellant's Brief at 15). As we stated in Stevens's first assignment of error, because Stevens did not object to this question, we review his argument for plain error. Evid.R. 611(C) discourages the use of leading questions during the direct examination of a witness unless it is necessary to develop that witness' testimony. As an initial observation, this question was posed to the victim during re-direct examination. *See State v. Davis,* 2d Dist. Clark No. 08CA00117, 2010-Ohio-5279, 2010 WL 4311743, ¶ 35 (concluding that Evid.R. 611(C) "reasonably applies to redirect examination of a witness").

However, even if we assume that the question is an improper leading question, Stevens did not demonstrate that, absent this question, the result of his trial would have been different. As such, this argument is also meritless.

{¶ 70} Finally, Stevens alleges three instances of prosecutorial misconduct during closing arguments that he claims denied him a fair trial. In determining whether a prosecutor's remarks were improper and if they prejudicially affected the defendant's substantial rights, "an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Johnson*, 3d Dist., 2014-Ohio-4750, 22 N.E.3d 249, ¶ 87, quoting *State v. Braxton*, 102 Ohio App.3d 28, 41, 656 N.E.2d 970 (8th Dist. 1995).

{¶ 71} "In closing arguments, prosecutors are entitled to some latitude regarding what the evidence has shown and the inferences that can be drawn." *State v. McGuire,* 3d Dist. Allen No. 1–13–47, 2015-Ohio-1887, 2015 WL 2354325, ¶ 81, citing *State v. Ballew,* 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996). "'"A prosecutor may comment upon the testimony and suggest the conclusion to be drawn by it, but a prosecutor cannot express his personal belief or opinion as to the credibility of a witness or as to the guilt of an accused, or go beyond the evidence which is before the jury when arguing for conviction."'" *Johnson* at ¶ 89, quoting *State v. Manns*, 5th Dist. Richland No. 08 CA 101, 2009-Ohio-3262, 2009 WL 1900432, ¶ 20, quoting *State v. Smith*, 12th Dist. Butler No. CA2007–05–133, 2008-Ohio-2499, 2008 WL 2168427, ¶ 7. *See also State v. Stober*, 3d Dist. Putnam No. 12–13–09, 2014-Ohio-1568, 2014 WL 1464226, ¶ 133, citing *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 16.

{¶ 72} Because Stevens did not object to any of the prosecutor's statements during closing arguments, we review his arguments for plain error. Stevens argues:

> During closing argument prosecution engaged in remarks that were inflammatory and prejudicial when he states [the victim] from the witness stand said the reason she kept defendant around or why she was talking to him was because she "was scared to death", "... was scared to death of what it would do to her body ..." (TT. p1294), that "he pumped four or five times before I pushed him off". (TT. p1298) an exaggeration of the testimony given by witness (TT. p416), the mentioning of a "six year old little boy who's too young to be able to come in and testify ..." (TT. p1333) to incite jurors passion and vouch for the credibility of detectives [sic] interview with [the victim's] son.

24

(Appellant's Brief at 16). "We evaluate the allegedly improper statements in the context of the entire trial." *McGuire* at ¶ 82, citing *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001), citing *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993).

{¶ 73} Regarding Stevens's first allegation, taken in context, the prosecutor summarized the victim's testimony regarding her admitted drug abuse and her testimony that she was "scared to death" related to her fear of heroin withdrawal— not of Stevens as Stevens attempts to imply. (See Sept. 19, 2014 Tr., Vol. V, at 1294). Therefore, we reject Stevens's first argument as meritless.

{¶ 74} Next, Stevens argues that the prosecutor's statement that the victim said "he pumped four or five times," when the victim actually testified "two or three times" is an exaggeration. (Id. at 1298); (Sept. 16, 2014 Tr., Vol. II, at 416). While the prosecutor did misstate the victim's testimony, this misstatement did not amount to misconduct because it was not purposeful or a falsification of evidence. *State v. Reynolds*, 2d Dist. Montgomery No. 19780, 2003-Ohio-7245, 2003 WL 23167363, ¶ 45. Therefore, Stevens cannot show that the result of his trial would have been different absent the prosecutor's misstatement.

{¶ 75} Regarding Stevens's third allegation that it was improper for the prosecutor to state that the victim's son is "a six year old little boy who's too young to be able to come in and testify," the State contends that it was not an improper statement because it "was made in the context of arguing that the defendant chose to attack the victim under circumstances calculated to make it hard to corroborate the victim's testimony." (Appellee's Brief at 18); (Sept. 19, 2014 Tr., Vol. V, at 1333). Indeed, in characterizing the evidence for the jury, the State, in referring to Stevens's attack on the victim's credibility, argued to the jury that the State does not "choose" who the victim is in a case or who witnesses a crime, and that the only witness to these crimes in this case is the victim's son, who is too young to be qualified as a witness. *See Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, at ¶ 120 (concluding that the prosecutor does not improperly vouch for a witness when he or she "is responding to defense counsel's attacks on a witness's credibility and refers to facts in evidence that tend to make the witness more credible"). Taken in context, even if we assume that the prosecutor's statement is improper, Stevens did not show, absent that remark, that the outcome of his trial would have been different.

{¶ 76} Next, Stevens argues that the prosecutor improperly inflamed the passions of the jury by implying that Stevens "kept [the victim] locked up" during trial. (Sept. 19, 2014 Tr., Vol. V, at 1336). "Statements that may 'inflame the passions

and prejudice of the jury' are deemed improper because they wrongly '"invite the jury to judge the case upon standards or grounds other than those upon which it is obligated to decide the case, namely, the law and the evidence."'" *Cappadonia*, 2010-Ohio-494, 2010 WL 541113, at ¶ 51, quoting *State v. Cunningham*, 178 Ohio App.3d 558, 2008-Ohio-5164, 899 N.E.2d 171, ¶ 27 (2d Dist.), quoting *State v. Draughn,* 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist. 1992). In context, the prosecutor was referring to the evidence in the record that, because the victim was reluctant to participate in the trial, she spent time in jail and on house arrest longer than necessary to assure her appearance because Stevens indicated that he was initially going to call her as a witness but ultimately decided not to. While Stevens objected to the prosecutor's characterization that Stevens "kept [the victim] locked up," the prosecutor, realizing her misstatement, withdrew her statement and reworded it to state that the trial court ordered the victim to remain in jail and on house arrest to assure her appearance at trial, not Stevens. That the victim was reluctant to participate in the case and had to ultimately be arrested and spend time in jail to assure her participation was already admitted into evidence. *See Cunningham* at ¶ 28 (concluding that it was not prosecutorial misconduct for the prosecutor to read the defendant's note to the jury because it was the second time that the jury heard it and it was already admitted into evidence). In light of the fact that the prosecutor remedied her statement, the prosecutor's comments did not improperly inflame the jury's passions because, taken in context, they were based on the victim's motives to lie. *See Cappadonia* at ¶ 51. See also Jackson at ¶ 120; Johnson at ¶ 93.

{¶ 77} Lastly, Stevens argues that the prosecutor improperly "alluded to her own personal integrity and the oath of office to bolster the states [sic] case before jurors when she stated, "You think I like to arrest a rape victim. I have never in my entire career ever done something like that. Ever. I'm not a prosecutor who believes in prosecuting at all cost. Absolutely not. Absolutely not. I did not enjoy doing that at all." (Appellant's Brief at 16, citing Sept. 19, 2014 Tr., Vol. V, at 1340). Stevens did not object to this statement; thus, we will review his argument for plain error. "An attorney should refrain from making references to their personal experiences." *State v. Blackburn,* 11th Dist. Trumbull No. 2001–T0052, 2003-Ohio-605, 2003 WL 261756, ¶ 80, citing *State v. Bogle*, 2d Dist. Montgomery No. 14774, 1996 WL 257216, *11 (May 17, 1996). We agree that the prosecutor's comment with regard to her personal beliefs and experiences exceeded the boundaries of acceptable prosecutorial conduct. However, although we conclude that the prosecutor's comment is improper, Stevens failed to show that a reasonable probability exists that, but for the prosecutor's improper remark, the result of the trial would have been different.

{¶ 78} Stevens alleged several instances in this case that he argues were error on

the part of the prosecutor. However, "Error is not necessarily misconduct. Indeed, most error is not." *Reynolds*, 2003-Ohio-7245, 2003 WL 23167363, at ¶ 46. "Prosecutorial misconduct, like ineffective assistance of counsel, necessarily involves an attorney's failure to conform to clear professional standards." *Id.* "'The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor."'" *Johnson* at ¶ 88, quoting *Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 231, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Therefore, although we found at least two instances in which the prosecutor's comments were improper amongst Stevens's numerous arguments, Stevens presented no evidence that the result of the trial would have been different. *See State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 128. Indeed, Stevens received a fair trial.

*Stevens*, 2016-Ohio-446 at ¶¶52-78.

The state appellate court's analysis is exhaustive, meticulous, and thorough. As stated above, the court finds nothing unreasonable in the state court's factual determination that improper vouching did not occur. As noted above, a claim of prosecutorial misconduct does not hinge on the culpability of the prosecutor as much as the fairness of the trial. *See Smith*, 455 U.S. at 219. Given the leeway reserved to state courts, the court finds nothing unreasonable in the state appellate court's application of the law to the facts of this case. Finally, the court agrees that conduct to which the defense did not object is procedurally defaulted.[2]

---

[2] Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977). Where a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The Sixth Circuit has rejected the notion that the state court has failed to enforce the state bar where it conducts a plain error review even though the defense failed to make contemporaneous objections at trial. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). To the contrary, "[f]ailure to adhere to the 'firmly-established Ohio contemporaneous objection rule' is 'an independent and adequate state ground' of decision." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012). To the extent

**C. Ground Three:  Sufficiency of the Evidence**

In his third ground for relief, Petitioner contends that his rape and burglary convictions were not supported by sufficient evidence. (R. 1). The United States Supreme Court has "explicitly h[e]ld that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original).  "In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses." *Wilson v. Tibbals*, No. 1:13CV00365, 2015 WL 1980714 at *5 (N.D. Ohio Apr. 30, 2015) (Pearson, J.) (*citing Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to the state court's factual determinations and "[a]ny conflicting inferences arising from the record, including credibility conflicts, should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) (*citing Walker*, 703 F.3d at 969-70).

Furthermore, the Supreme Court has emphasized that a state court's determination as to the sufficiency of the evidence is entitled to "double deference:"

---

Petitioner would argue that ineffective assistance of counsel serves as cause to excuse his default, the merits of Petitioner's ineffective assistance claim were rejected above.

28

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury--not the court--to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (*quoting Renico v. Lett*, 559 U. S. 766, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012); *accord Gipson v. Sheldon*, 2016 WL 4887471 at **14-15 (6th Cir. Sept. 14, 2016) ("AEDPA and *Jackson* together create two layers of judicial deference: First, we must defer to the jury's rational conclusions drawn from the evidence…. Second, we must defer to the state court's decision rejecting a sufficiency of the evidence claim.") (internal citations omitted).

The state appellate court, upon reviewing this claim, stated:

{¶ 7} In his third assignment of error, Stevens argues that his rape and aggravated-burglary convictions are based on insufficient evidence.[]

{¶ 8} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C–120570 and C–120571, 2013-Ohio-4775, 2013 WL 5864591, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 25 (1st Dist.).

*See also* \*594 *State v. Berry*, 3d Dist. Defiance No. 4–12–03, 2013-Ohio-2380, 2013 WL 2638704, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 9} Stevens was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(c) and 2907.02(A)(2), respectively, and one count of aggravated burglary in violation of R.C. 2911.11(A)(1).

R.C. 2907.02 sets forth the offense of rape and provides, in pertinent part: (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

R.C. 2907.02(A)(1)(c), (A)(2).

{¶ 10} R.C. 2907.01(A) defines "sexual conduct," in relevant part, as "vaginal intercourse between a male and female; * * * and cunnilingus between persons regardless of sex." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 11} First, the relevant inquiries regarding Stevens's rape conviction under R.C. 2907.02(A)(1)(c) are whether the evidence, when viewed in a light most favorable to the prosecution, is such that any rational trier of fact could have found that: (1) Stevens engaged in sexual conduct with the victim; (2) Stevens and the victim are not married; and (3) the victim's ability to resist or consent was substantially impaired because of a mental or physical condition, and Stevens knew or had

reasonable cause to believe the victim's ability to resist or consent was substantially impaired because of that mental or physical condition. See R.C. 2907.02(A)(1)(c).

{¶ 12} Viewing the evidence in a light most favorable to the prosecution, we conclude that Stevens's rape conviction under R.C. 2907.02(A)(1)(c) is supported by sufficient evidence. A rational trier of fact could conclude that Stevens and the victim are not married, which Stevens does not dispute, and that Stevens engaged in sexual conduct with the victim on October 8, 2013. (Sept. 16, 2014 Tr., Vol. II, at 390, 401, 403). With regard to the sexual conduct on October 8, 2013, the victim provided the following testimony:

> [The Victim]: I woke up to him having sex with me and what felt like he ejaculated in me. * * * The next thing I remember is me waking up to him on top of me. * * *

> [The Prosecutor]: Okay. So, at some point you know you fell asleep?

> [The Victim]: Yes.

> [The Prosecutor]: To him on top of you?

> [The Victim]: Yes.

[The Prosecutor]: Okay. I need you to be as specific as possible[.] What do you remember as you woke up?

[The Victim]: I remember, he—he—I remember waking up and having cum on—I was very wet and I just remember saying, "You came in me." He said, "No, it's on my leg." And I said, "I don't care where it is. This isn't from me."

[The Prosecutor]: Okay. Could you tell that he had been—that his penis had been inside of your vagina?

[The Victim]: Yes. I didn't have pants on. Yeah, he had sex with me.

(Id. at 401, 403). While, the victim testified on cross-examination and re-direct examination that she did not know for certain whether Stevens penetrated her vagina with his penis, the victim testified that she was certain that Stevens engaged in vaginal intercourse with her because Stevens did not deny that he had sex with her and because she felt ejaculate inside of her vagina "where he would have had his penis in [her]." (Id. at 554, 633–634). She later confirmed on redirect examination that she was sure that Stevens engaged in vaginal intercourse with her.

31

(Id. at 643–644).

{¶ 13} In *State v. Wine*, we noted that the courts of appeals have "concluded that sleeping is a 'physical condition' that substantially impairs a victim's ability to resist for purposes of rape in violation of R.C. 2907.02(A)(1)(c)." 3d Dist. Auglaize No. 2–12–01, 2012-Ohio-2837, 2012 WL 2371396, ¶ 50, citing *State v. Graves*, 8th Dist. Cuyahoga No. 88845, 2007-Ohio-5430, 2007 WL 2949525, ¶ 22, *State v. Wright*, 9th Dist. Medina No. 03CA0057–M, 2004-Ohio-603, 2004 WL 240220, ¶ 6, and *State v. H.H.*, 10th Dist. Franklin No. 10AP–1126, 2011-Ohio-6660, 2011 WL 6826833, ¶ 10. After viewing the evidence in a light most favorable to the prosecution, a review of the record shows that a rational trier of fact could conclude beyond a reasonable doubt that the State proved the elements of the rape offense under R.C. 2907.02(A)(1)(c).

{¶ 14} Next, the relevant inquiries regarding Stevens's rape conviction under R.C. 2907.02(A)(2) include the first element—sexual conduct—discussed in our review of the sufficiency of the evidence supporting Stevens's rape conviction under R.C. 2907.02(A)(1)(c) and two additional elements: (1) whether Stevens purposely compelled the victim to engage in that sexual conduct, and (2) whether Stevens did so by force or threat of force.

{¶ 15} As to the first element, a rational trier of fact could conclude that Stevens engaged in sexual conduct with the victim on October 9, 2013. The victim testified that she invited Stevens to come to her house on October 9, 2013 because she wanted to obtain Methadone from Stevens; however, because he refused to leave, the victim testified that her sister and her sister's boyfriend had to come to her house to coax Stevens into leaving. (Sept. 16, 2014 Tr., Vol. II, at 406–412). According to the victim, Stevens eventually left, and, after he left, she took her prescription sleeping medication and went to sleep. (Id. at 411–414). With regard to the sexual conduct on October 9, 2013, the victim provided following testimony:

> [The Prosecutor]: So, you go to sleep. How do you wake up?
>
> [The Victim]: I wake up to [Stevens] performing oral sex and coming—he thrusted up against me and—
>
> [The Prosecutor]: Okay. Let's—Let's stop. When you say "performing oral sex," I need details, the jury needs details.
>
> [The Victim]: His mouth was on my vagina.
>
> [The Prosecutor]: Okay. And you could actually feel that?

32

[The Victim]: Yes. I—I was groggy, but it was weird. My medicine makes me sleep.

[The Prosecutor]: Okay.

[The Victim]: I was coming out of like a dream or something, it felt, and he was performing oral sex. And he came up and he put his penis in me, pumping, maybe like two or three times. It was very short. I realized what was going on. I pushed him off me.

\* \* \*

Because he did—this is the second time that I woke up to him having sex with me.

(Id. at 415–418). The victim testified that she was wearing pants and underwear when she went to sleep and that Stevens completely removed her pants and underwear. (Id. at 418). The victim further testified that, after she pushed Stevens off of her, she went to her bedroom to put clothes on. (Id. at 418–419). She testified that after the [sic] she put clothes on, she told Stevens that he had to leave; she grabbed his black jacket off of her table and threw it out the door; and when Stevens went after the jacket, she locked the door behind him. (Id. at 419–421).

{¶ 16} On cross-examination, the victim testified, "I felt his mouth on my vagina. And then he thrusted up against my body and inserted his penis like two or three times. Then I woke up." (Id. at 570). After she realized what was going on, the victim testified that she told Stevens to get off of her. (Id.). She testified that she was asleep, but that she "knew it was happening, but it was just a slow reaction." (Id. at 571). She further testified that she was "groggy" at the time Stevens engaged in vaginal intercourse with her. (Id. at 613).

{¶ 17} According to the victim, her six-year-old son was in the same bed that Stevens engaged in the unwanted sexual conduct with her and that her son was already awake when she woke up and realized what Stevens was doing. (Id. at 417, 571). The victim testified that her son told her that Stevens "picked him up two times and put him back on the bed." (Id.).

{¶ 18} After viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that Stevens purposely compelled the victim to engage in sexual conduct by force or threat of force. In addressing the force-or-threat-of-force language under the rape statute, the Supreme Court of Ohio

33

clarified that "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), paragraph one of the syllabus. Indeed, "'[f]orce' is defined as 'any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.'" (Emphasis sic.) *State v. Euton*, 3d Dist. Auglaize No. 2–06–35, 2007-Ohio-6704, 2007 WL 4374293, ¶ 60 (Preston, J., concurring in part and dissenting in part), quoting R.C. 2901.01(A)(1). "By its plain language, the definition provides 'any' violence, compulsion or constraint by 'any means.'" *Id.*, quoting R.C. 2901.01(A)(1). "Simply put, 'any' means 'any.'" *Id.* "As used in R.C. 2901.01(A)(1) 'any' is an adjective." Id. "As an adjective, 'any' is defined as: '[o]ne or some, regardless of kind, quantity, or number; an indeterminate number or amount.'" *Id.*, quoting *The American Heritage Dictionary* 117 (2d College Ed.1985).

{¶ 19} As the definition of force states, it includes force by any violence, constraint, or compulsion. *Black's Law Dictionary* defines "violence," in part, as "[t]he use of physical force." *Black's Law Dictionary* 1801 (14th Ed.2014). And *The American Heritage Dictionary* defines violence, in part, as "[p]hysical force exerted for the purpose of violating, damaging, or abusing." The *American Heritage Dictionary* at 1350. *Black's Law Dictionary* defines compulsion as "[t]he act of compelling; the quality, state, or condition of being compelled." *Black's* at 348. Black's Law Dictionary also describes, "Compulsion can take other forms than physical force; but in whatever form it appears * * * [i]t can best be considered under the heads of obedience to orders, material coercion, duress per minas, and necessity." *Id.*, quoting *Turner, Kenny's Outlines of Criminal Law* 54 (16th Ed.1952). While not defined by *Black's Law Dictionary*, "constraint" is defined by *The American Heritage Dictionary* as "[t]he threat or use of force to prevent, restrict, or dictate the action or thought of others." *The American Heritage Dictionary* at 314.

{¶ 20} In *Wine*, we noted that "the key inquiry for determining whether the State presented sufficient evidence on the element of force is whether the 'victim's will was overcome by fear or duress.'" *Wine*, 2012-Ohio-2837, 2012 WL 2371396, at ¶ 40, quoting *In re Forbess*, 3d Dist. Auglaize No. 2–09–20, 2010-Ohio-2826, 2010 WL 2488064, ¶ 40, citing *State v. Heft*, 3d Dist. Logan No. 8–09–08, 2009-Ohio-5908, 2009 WL 3720562, ¶ 88, citing *State v. Eskridge*, 38 Ohio St.3d 56, 58–59, 526 N.E.2d 304 (1988). We further noted that, "[w]hile this inquiry is taken from *State v. Eskridge* where the victim was a young child, this inquiry is not limited to such cases since *Eskridge* cited to *State v. Martin*, 77 Ohio App. 553 [68 N.E.2d 807] (9th Dist. 1946), where the victim was an adult, and stated this standard as a general rule of law." *Id.*, citing *State v. Rupp*, 7th Dist. Mahoning No. 05 MA 166, 2007-Ohio-1561, 2007 WL 969069, ¶ 25–28.

{¶ 21} "[T]he amount of force [necessary to prove forcible rape under R.C. 2907.02(A)(2) ] must be examined in light of the circumstances." *State v. Runyons*, 3d Dist. Union No. 14–91–30, 1992 WL 136196, *2 (June 9, 1992). The Supreme Court of Ohio "case law demonstrates that the type and amount of force necessary to purposefully compel a victim to submit by 'force or threat of force' depends upon the victim and the offender's relationship." *Wine* at ¶ 41, citing *State v. Pordash*, 9th Dist. Lorain No. 04CA008480, 2004-Ohio-6081, 2004 WL 2600461, ¶ 12. However, we concluded in *Wine* that "subtle and psychological" force is insufficient force in cases where the victim is an adult and the offender was not in a position of authority over the victim. *Id.* at ¶ 47, citing *Schaim* at 54–55, 600 N.E.2d 661.

{¶ 22} The proper inquiry in this case is not whether this court finds the element of force proven beyond a reasonable doubt; rather, the proper inquiry is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have' concluded that 'force' was present." (Emphasis sic.) *Euton*, 2007-Ohio-6704, 2007 WL 4374293, at ¶ 59, quoting *State v. Vires*, 3d Dist. Auglaize No. 2–07–16, 2007-Ohio-6015, 2007 WL 3342800, ¶ 12, citing *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. Because it is dispositive, even though there appears to be two acts of sexual conduct— cunnilingus and vaginal intercourse—presented by the facts of this case, we need only discuss whether Stevens purposely compelled the victim to engage in vaginal intercourse by force or threat of force. Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that Stevens purposely compelled the victim to engage in vaginal intercourse on October 9, 2013 by force or threat of force. Based on the totality of the circumstances of this case, the State presented sufficient evidence that the victim's will was overcome by fear or duress. *See Wine* at ¶ 47, citing *Eskridge* at 58–59, 526 N.E.2d 304 and *Schaim* at 55, 600 N.E.2d 661.

{¶ 23} In *Wine*, we said that subtle and psychological force is insufficient force in cases where the victim is an adult and the offender is not in a position of authority over the victim; however, based on the totality of the circumstances of this case, there is more than subtle and psychological force. The victim testified that she went to sleep wearing pants and underwear and that Stevens completely removed her pants and underwear. Independent of its reduced-force analysis in *Eskridge* for situations involving the rape of a child by a parent, the Supreme Court stated, "the victim testified that Eskridge removed her panties and there was testimony that he laid her on the bed—both acts of compulsion and constraint that are independent of the act of rape." *Eskridge* at 58, 526 N.E.2d 304.

35

{¶ 24} A rational trier of fact could have also concluded that Stevens constrained the victim by "thrust[ing] up against [her] body" as she was beginning to become more lucid—that is, as she was beginning to become more awake, Stevens thrusted up against her body to prevent or restrict her from moving so he could engage in sexual conduct with her. In *Wine* we noted that "'the statute requires that some amount of force must be proven beyond the force inherent in the crime itself.'" *Id.* at ¶ 48, quoting *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998). Based on the victim testimony that Stevens "thrusted up against [her] body and inserted his penis like two or three times," there is some amount of force beyond the force inherent in the crime itself. (Emphasis added.) (Sept. 16, 2014 Tr., Vol. II, at 570). That is, the act of thrusting up against her body is force that is separate and distinct from the force necessary to facilitate the vaginal intercourse. Indeed, "thrust" is defined as "[t]o push or drive quickly and forcibly." *The American Heritage Dictionary* at 1267.

{¶ 25} Furthermore, for an offender to be guilty of rape, a victim does not need to prove that he or she physically resisted the offender. R.C. 2907.02(C). Yet, that the victim was required to physically resist Stevens by pushing him off of her after he thrusted up against her body is further indicative in this case that Stevens compelled the victim to submit to the sexual conduct through physical force—through violence or constraint. *See State v. Henry*, 2009-Ohio-3535, 2009 WL 2159688, at ¶ 45, 60 (Shaw, J., dissenting) (concluding that the victim's resistance should "be used to infer any force or threat of force on the part of the defendant in trying to complete the sexual act" and that "[t]he degree of force necessary for [the victim] to use to get away from Henry is further indication of the degree of force being used by Henry to perpetrate the offense"). That is, Stevens used force against the victim with the purpose of violating, damaging, or abusing her by fully removing her pants and underwear to engage in sexual conduct, and used force to prevent, restrict, or dictate the victim's actions by thrusting up against her body as she began to awaken to engage in sexual conduct.

{¶ 26} A rational trier of fact could further infer that the victim was compelled to submit to the sexual conduct based on the circumstances surrounding Stevens and the victim's relationship. This was the second night in a row that the victim awoke to Stevens performing unwanted sexual acts on her. Moreover, the victim did not know how Stevens gained entry to her house. Indeed, any reasonable person would experience some form of duress when they are awakened in the middle of the night by a trespasser performing unwanted sexual acts on them in the sanctity of their own bed, in their home. A rational trier of fact could infer force or the threat of force surrounding the circumstances of this case where the victim awoke to find Stevens, a man that: (1) she has known for a short period of time; (2) she, only hours earlier, was required to enlist the assistance of her sister and her sister's

36

boyfriend to coax into leaving her house, (3) performed unwanted sexual acts on her the night before, and, (4) is again performing unwanted sexual acts on her while her six-year-old son is in the same bed. In addition, based on the victim rebuffing Stevens's prior authorized and unauthorized sexual advances, a reasonable juror could infer that Stevens changed sexual acts by thrusting up against the victim's body as she began to awaken during the second rape to ensure that he could complete the sexual conduct.

{¶ 27} Nevertheless, although we concluded, in *Wine*, that the evidence was "insufficient to establish that Wine purposely compelled [the sleeping victim] to submit to the sexual contact by (through the agency or instrumentality of) force or threat of force," the facts presented by this case are distinguishable from *Wine*. *Wine*, 2012-Ohio-2837, 2012 WL 2371396, at ¶ 47. In *Wine*, the victim, who was "wearing a pair of [loose] pink flannel pajamas with nothing else underneath," awoke when she felt Wine's "finger inside her vagina." *Id*. at ¶ 10. The most notable difference is that the victim, in *Wine*, "was asleep during the entire time the sexual contact occurred." *Id*. at ¶ 51. Here, the victim was at least somewhat lucid and consciously aware of the sexual conduct, albeit in a groggy, dreamlike state. Second, Wine merely manipulated the victim's loose-fitting pajamas to execute the sexual contact; whereas, as we stated above, Stevens completely removed the victim's pants and underwear. Also different in this case is that, as the victim was beginning to wake up, Stevens changed sexual acts by thrusting up against her body to constrain her.

{¶ 28} Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Stevens engaged in sexual conduct with the victim and that Stevens purposely compelled the victim to engage in that sexual conduct by force or threat of force, and therefore, committed rape under R.C. 2907.02(A)(2).

{¶ 29} Finally, viewing the evidence in a light most favorable to the prosecution, we conclude that Stevens's aggravated-burglary conviction is supported by sufficient evidence. R.C. 2911.11(A)(1) sets forth the offense of aggravated burglary and provides:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:

> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.

37

{¶ 30} The same definition of force that we discussed above applies to the crime of aggravated burglary. *See* R.C. 2901.01(A)(1). Trespass occurs when a person, without privilege to do so, knowingly enters on the premises of another. *State v. O'Neal*, 87 Ohio St.3d 402, 408, 721 N.E.2d 73 (2000); R.C. 2911.21(A)(1). "R.C. 2901.01(A)(12) defines 'privilege' as 'an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, *600 or relationship, or growing out of necessity." *State v. Worth*, 10th Dist. Franklin No. 10AP–1125, 2012-Ohio-666, 2012 WL 554457, ¶ 42, quoting R.C. 2901.01(A)(12). Finally, "physical harm to persons" is defined as "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 31} The relevant inquiries regarding Stevens's aggravated burglary conviction are whether the evidence, when viewed in a light most favorable to the prosecution, is such that any rational trier of fact could have found that: (1) Stevens trespassed, (2) by force, stealth, or deception, (3) in a structure occupied by the victim, (4) with the purpose to commit any criminal offense, and (5) Stevens inflicted physical harm on the victim. *Accord State v. Demoss*, 2d Dist. Champaign No. 2001–CA–5, 2002 WL 360581, *10 (Mar. 8, 2002).

{¶ 32} As we previously discussed, the victim testified that after the second rape, she told Stevens that he had to leave and that she grabbed his black jacket off of her table and threw it out the back door. (Sept. 16, 2014 Tr., Vol. II, at 419). When Stevens went after his jacket, the victim closed and locked the door behind him. (*Id.*). She testified that she saw a "pink sparkly lanyard with keys on it," which were not hers, when she grabbed the black jacket, but noticed that the keys were gone after she locked the door. (*Id.* at 420). After the victim locked the door, she testified that Stevens was "going around yelling in [her] windows, knocking on my windows, 'I need my keys. I need my keys.'" (Id. at 422). She testified,

> I looked for my phone right away because I—I was going to call the police, but my phone was not there. And I—[Stevens] was still there. I wasn't going to go outside to get help. I wasn't going to ask him for my phone. I was just going to console my son, wait for him to leave, and then figure out what next. I—I didn't really care at that moment. I just wanted him to go and I wanted my son to relax.

(Id. at 423). The victim testified that Stevens opened the window above her kitchen sink by climbing on a table that was in her backyard, and that Stevens continued to yell. (Id. at 423–424). According to the victim, she yelled back at Stevens that she did not have his keys, that the keys were not in her house. (Id. at 423). According to the victim, Stevens attempted to open her kitchen window to gain access to her

house, and when she saw Stevens in the open kitchen window, she grabbed a small knife and indicated a stabbing motion to Stevens because she "wanted him to think [she] was going to stab him." (Id. at 425). Eventually, after Stevens abandoned the window, the victim testified that he

> grabs a chair and he runs back to [the victim's] shed and like full force towards [her]—he says he's going to break [her] door down or break [her] windows if [she] don't [sic] give him his keys. So, [she], after a few minutes of that [she] just let him in. [She] said, "Fine, look for your keys."

(Id. at 427–428). The victim testified that she was afraid that Stevens was going to break her door in if she did not let him in. (Id. at 428).

{¶ 33} After the victim allowed Stevens back into the house to find his keys, "he immediately picked [her] up and threw her onto her back." (Id. at 429). She testified,

> He was just—I—he was choking me and just throwing me all over. I couldn't get away. I broke loose one time and I almost got to the door and he grabbed—he grabbed me. I know he threw me down the first flight of steps then I went down the other, and I don't remember after that. I just—he was really—I— he—I had never been handled like that by anybody. * * * I was terrified.

(Id.). After that, according to the victim, Stevens left, and she ran to a neighbor's house to call for help. (Id. at 430). The victim further testified that she sustained physical injuries from Stevens's assault. (Id. at 463). Ronda Norris, ("Norris"), a registered nurse with St. Rita's Medical Center Emergency Room, testified about the injuries she observed on the victim on October 9, 2013. (Sept. 17, 2014 Tr., Vol. III, at 813, 816, 842–845, 852–861). The State introduced as evidence photographs depicting the victim's injuries. (Sept. 16, 2014 Tr., Vol. II, at 463–470); (Sept. 17, 2014 Tr., Vol. III, at 852–861); (Sept. 18, 2014 Tr., Vol. IV, at 1244–1247); (State's Exs. 47–81).

{¶ 34} Viewing this evidence in a light most favorable to the prosecution, we conclude that Stevens's aggravated-burglary conviction is supported by sufficient evidence. While the record reflects that the victim allowed Stevens back into her house to "find his keys," a rational trier of fact could infer from the evidence that Stevens trespassed. In addressing the trespass element of aggravated burglary, the Supreme Court of Ohio concluded that, even when a defendant lawfully enters an occupied structure, a jury can infer from the evidence that the defendant's privilege

to remain in that structure terminates when the defendant initiates a criminal offense against the victim. *See State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987) ("even assuming lawful initial entry, the jury was justified in inferring from the evidence that appellant's privilege to remain in [the] home terminated the moment he commenced his assault on her"). Therefore, even if we assume without deciding that Stevens lawfully entered the victim's home, his privilege to remain there terminated the moment he commenced his assault on her. *Id.*; *Worth*, 2012-Ohio-666, at ¶ 46 (concluding there was sufficient evidence to support Worth's aggravated-burglary conviction, in part, because "regardless of whether [Worth's] entry * * * was authorized or unauthorized, his privilege to remain therein was implicitly revoked due to his actions of violence against [the victim]"), citing *State v. Murray*, 11th Dist. Lake No. 2003–L–045, 2005-Ohio-1693, 2005 WL 820540, ¶ 59; *State v. Casey*, 2d Dist. Miami No. 19940, 2004-Ohio-1017, 2004 WL 405738, ¶ 26; *State v. Morton*, 147 Ohio App.3d 43, 2002-Ohio-813, 768 N.E.2d 730, ¶ 51 (8th Dist.).

{¶ 35} Next, a rational trier of fact could have also found that Stevens had the purpose to commit a criminal offense during the course of the trespass. The Supreme Court of Ohio "addressed the requirement that a person trespass with the purpose to commit a crime" and concluded "that the element of purpose to commit a crime can be satisfied when intent is formed at any point during the trespass and need not be formed prior to entering the occupied structure." *State v. Pickens*, 3d Dist. Crawford No. 3–07–30, 2008-Ohio-1140, 2008 WL 697110, ¶ 17, citing *State v. Fontes*, 87 Ohio St.3d 527, 530, 721 N.E.2d 1037 (2000) ("for purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass"). The State produced evidence that, when Stevens reentered the victim's home, Stevens physically assaulted the victim. From this evidence, a reasonable juror could infer that Stevens formed the purpose to commit an assault offense during the course of the trespass. *Compare Demoss*, 2002 WL 360581, at *11 (concluding that a rational trier of fact could infer that Demoss formed the purpose to commit a rape or felonious assault during the course of the trespass).

{¶ 36} Finally, a rational trier of fact could conclude that Stevens inflicted physical harm on the victim based on the victim's and Norris' testimony regarding the victim's injuries as well as the photographic evidence of the victim's injuries submitted by the State. Id.

{¶ 37} Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Stevens trespassed by force in a structure occupied by the victim with the purpose to commit felonious assault and inflicted physical harm on the victim, and therefore, committed

aggravated burglary.

*Stevens*, 2016-Ohio-446 at ¶¶7-37.

The court has little to add to the state appellate court's detailed recitation of the evidence adduced at trial and how the evidence satisfies the contested elements of rape and burglary respectively. The jury plainly credited the testimony of the victim and other witnesses at trial, which was sufficient to substantiate all the elements necessary to sustain Stevens' convictions. Furthermore, the alleged lack of forensic evidence concerning the rape convictions is immaterial, as eyewitness testimony, on its own, is sufficient to convict. *See, e.g., Tucker v. Palmer*, 541 F.3d 652, 658-659 (6th Cir. 2008) ("[T]his Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction.") (*citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty.")); *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *cf. Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) ("Circumstantial evidence alone is sufficient to support a conviction, and [i]t is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt.") (internal citations and quotation marks omitted).

The court finds no error in the state appellate court's determination, after reviewing the

evidence in the light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, Petitioner's third ground for relief is without merit

## D. Ground Four: Abuse of Discretion

Petitioner's fourth ground for relief contends that the trial court abused its discretion "when it permitted detective Jennings to be present during detective Leland's testimony (TT. 32) with the understanding that Jennings, as State's witness, would in fact be testifying as State's witness and present at the prosecution's table during all trial testimony. (TT. 5)." (R. 19, PageID# 1746-1747). Petitioner further takes issue with the court allowing the prosecution to remove a juror for cause after initially failing to do so, overruling objections to allegedly hearsay testimony regarding what the victim's son stated, overruling objections to alleged improper vouching, and failing to grant the defense's motion for acquittal and its renewed motion. *Id*.

Respondent counters that Petitioner's fourth ground for relief is procedurally defaulted as the state appellate court declined to address it for the reasons set forth below:

> [*P81]  With respect to Stevens's arguments under his fourth assignment of error that we have not already addressed, he fails to present any citations to case law or statutes in support of his assertions. "[A] defendant has the burden of affirmatively  demonstrating the error of the trial court on appeal." *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook*, 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27. "Moreover, '[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" *Id*., quoting *Cook* at ¶ 27.

> [*P82] "App.R. 12(A)(2) provides that an appellate court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting

App.R. 12(A)(2). "Additionally, App.R. 16(A)(7) requires that an appellant's brief include '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." *Id*., quoting App.R. 16(A)(7). Stevens fails to cite any legal authority to support any of his arguments under his fourth assignment of error.

[*P83]  Since we are not required to address arguments that have not been sufficiently presented for review or supported by proper authority under App.R. 16(A)(7), we will not address Stevens's arguments. *See State v. Jordan*, 10th Dist. Franklin No. 11AP-691, 2012-Ohio-1760, ¶ 17, citing *State v. Gonzalez*, 10th Dist. Franklin No. 10AP-628, 2011-Ohio-1193, ¶ 28-29.

*Stevens*, 2016-Ohio-446 at ¶¶81-83.

In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

43

Petitioner does not challenge the finding that he failed to comply with the state's applicable procedural rule–Ohio App.R. 16(A)(7)–nor would it be appropriate for this court to contradict a state court on the proper application of a state rule.[3] It is apparent the state appellate court enforced the state procedural sanction when it declined to address Steven's argument on the merits. Courts in this district have determined that Ohio App.R. 16(A)(7) constitutes an "independent and adequate" state ground on which the state can foreclose federal review. *Campbell v. Bunting*, 2015 U.S. Dist. LEXIS 109495, *16-20 (N.D. Ohio May 29, 2015 (White, M.J.) (gathering cases), *report and recommendation adopted by* 2015 U.S. Dist. LEXIS 109496 (N.D. Ohio Aug. 19, 2015) (Carr, J.); *accord Hayes v. Larose*, 2016 U.S. Dist. LEXIS 51659, *9 (N.D. Ohio Apr. 18, 2016) (Boyko, J.) ("The Magistrate Judge correctly determined that courts in both this district and the Southern District of Ohio have found Ohio Appellate Rule 16(A)(7) an adequate and independent state rule upon which the state may foreclose federal habeas review."). This court agrees with *Campbell, Hayes*, and the authority cited therein.

Therefore, ground four of Stevens's habeas petition is procedurally defaulted based on his failure to comply with Ohio App. R. 16(A)(7) and the state court's enforcement of the procedural sanction. Moreover, Petitioner has failed to present any cause for his failure to comply with the procedural rule.

---

[3] The Sixth Circuit Court of Appeals has observed that a federal court "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)), *cert. denied*, 488 U.S. 1011, 102 L. Ed. 2d 790, 109 S. Ct. 799 (1989); *Bennett v. Warden, Lebanon Correctional Inst.*, 782 F.Supp.2d 466, 478 (S.D. Ohio March 15, 2011) ("[T]he state courts are the final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters.")

## VI.    CONCLUSION

For the reasons stated above, the court recommends that Stevens's petition for writ of

habeas corpus (R. 1) be DENIED.


Date:   October 29, 2019                          *s/ David Ruiz*
                                                  David A. Ruiz
                                                  United States Magistrate Judge



## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);** ***Thomas v. Arn*, 474 U.S. 140 (1985),** ***reh'g denied*, 474 U.S. 1111 (1986).**